[No. 3379.  Decided April 30, 1901.]

JOHN R. OWENS, *Respondent*, v. FRANK W. SWANTON *et al., Appellants.*

LANDLORD AND TENANT — FORCIBLE ENTRY AND DETAINER — COUNTER-CLAIM FOR DAMAGES.

In an action of forcible entry and detainer, the defendants cannot, by way of cross complaint, set up a claim for damages by reason of the wrongful issuance of the writ of restitution, but are relegated to an action on the bond given by plaintiff to secure such writ.

SAME — UNAUTHORIZED LEASE BY AGENT — RATIFICATION.

The acceptance by the owner from a tenant of rental stipulated for in a lease made by an agent having no express authority therefor, does not amount to a ratification of the full terms of the lease, where the tenant was immediately notified of the

repudiation of the lease and that he could remain in possession only under a monthly tenancy.

SAME — EVIDENCE.

The refusal of the court to admit in evidence, in an action of unlawful detainer, a lease purporting to be executed by an agent of plaintiff is proper, where there is no proof of the agent's authority nor of the subsequent ratification by the principal.

Appeal from Superior Court, King County.—Hon. E. D. BENSON, Judge. Affirmed.

*Burke, Shepard & McGilvra,* for appellants.

*White, Munday & Fulton,* for respondent.

PER CURIAM.—The respondent, John R. Owens, in the month of September, 1897, was the owner of a certain brick block known as "No. 109 Second Avenue South," in the city of Seattle, and more particularly described in the complaint. He avers that during said month he leased the three upper floors of said building to Lucien Blum and Marie Blum, his wife, for an indefinite time, with monthly rental reserved, beginning on the 15th day of said month; and that the periods for which rent was payable began on the 15th day of each month, and ended on the 15th day of the succeeding month. On the 14th day of January, 1898, respondent, for the purpose of terminating said tenancy, caused to be served upon the said Blum and wife a notice in writing by the terms of which they were notified to quit, and deliver to respondent the possession of the premises, at the expiration of that month of said tenancy which commenced on the 15th day of January, 1898, and ended on the 15th day of February, 1898. The said Blum and wife did not comply with the terms of said notice, but, after the service thereof, delivered possession of the premises to Frank W. Swanton and James H. Laurance, the appellants in this action. Appellants

continued in such possession until dispossessed by a writ of restitution issued in this action, which was brought against them by respondent under the forcible entry and detainer statute to regain possession of the premises. The complaint alleges that the reasonable value of the use and occupation of the premises was $200 per month, and that respondent has been damaged in the sum of $1,000 over and above the reasonable rental value of the premises. Appellants, in their second amended answer, allege that on the 8th day of September, 1897, the respondent did, by written instrument, lease the said premises to said Blum and wife for the term of eighteen months from and after the 15th day of September, 1897, at a monthly rental of $50 per month, payable monthly in advance, and that on the 18th day of January, 1898, said Blum and wife duly assigned said lease to the appellants, who thereupon went into possession of the premises, and so continued in possession until the 23d day of March, 1898, when they were dispossessed by respondent through the writ of restitution issued in this cause. Appellants further aver, by way of cross complaint, that the writ of restitution was wrongfully procured, and that respondent, in taking possession of the premises, had also taken possession of certain furniture and fixtures of the appellants of the value of $1,000, and converted the same to his own use. It is also averred that appellants have been damaged in the said sum of $1,000, and in the further sum of $2,500, by the wrongful issuance of said writ, and the loss of the use and possession of said premises and the breaking up of their business, and they demand judgment against respondent in the sum of $3,500. Respondent interposed a demurrer to said cross complaint upon the grounds: (1) That it appears upon the face thereof that the court has no jurisdiction over the subject matter of said cross complaint in

this action; and (2) that said cross complaint does not state facts sufficient to constitute a defense or counter-claim or cross complaint. The court sustained the demur-rer, and appellant's counsel duly excepted. The reply denies the material affirmative allegations of the answer. A trial was had before a jury, and, when the evidence had all been introduced, the legal sufficiency of the appellants' evidence was challenged, and said challenge was by the court sustained. The court found the facts as set forth in respondent's complaint, and decided as a matter of law that a verdict should be found by the jury in favor of respondent for the possession of said premises and for the sum of $253, the value of the use and occupation of said premises from the 15th day of February, 1898, to the 23d day of March, 1898; and thereupon the court discharged the jury from further consideration of the case, and directed judgment to be entered in accordance with its said decision. Judgment was accordingly entered award-ing to respondent the possession of the premises and for the sum of $506 against appellants, being double the amount of the value of the use and occupation of the prem-ises by appellants. A motion by appellants for a new trial was overruled.

The first assignment of error is that the court erred in sustaining the demurrer to the cross complaint and claim for damages in the answer. This point seems to have been clearly decided by this court adversely to the appel-lants' contention in the following cases. *Ralph v. Lomer,* 3 Wash. 401 (28 Pac. 760); *Phillips v. Port Townsend Lodge,* 8 Wash. 529 (36 Pac. 476). Appellants' coun-sel, in their brief, ask the following question: "Shall they [appellants] be driven to a separate action on respondent's bond, and, if so, why?" We think that is their remedy. The forcible entry and detainer statute provides that

such a bond, with two or more sureties, shall be given before any writ shall issue prior to judgment, and shall be conditioned "that the plaintiff will prosecute his action without delay, and pay all costs that may be adjudged to the defendant, and *all damages which he may sustain by reason of the writ of restitution having been issued, should the same be wrongfully sued out.*" To secure safety and security in the matter of this bond, the statute further provides that an application may be made to the court for additional sureties. Bal. Code, § 5536. It may be argued that a defendant in a forcible entry and detainer action may waive his claim against the sureties upon the bond, and seek recovery against the plaintiff alone, and that in such event he may set up his claim for damages by way of cross complaint in the original action. But, in any event, we believe the following language of this court in *Phillips v. Port Townsend Lodge, supra*, is the better interpretation of the law. At page 533 of the opinion the court says:

"The very object the legislature had in view in enacting the statute under which the appellants were proceeding was to afford a summary and adequate remedy for obtaining possession of premises withheld by tenants in violation of the covenants of their lease, and this object would be entirely frustrated if tenants were permitted to interpose every defense usual or permissible in ordinary actions at law. . . . In such proceedings counterclaims and offsets are not available."

A number of cases from other jurisdictions are there cited. We think the court did not err in sustaining the demurrer to the cross complaint.

The only other error assigned is the refusal of the court to admit in evidence certain papers marked as defendants' exhibits. It appears that the respondent was at the time of the matter complained of a non-resident of this state, and, being the owner of the property in question, had placed

it in charge of his brother, H. K. Owens, who had deputized one Frank B. Wiestling to collect rents, procure tenants, and otherwise look after the property. At a time when said H. K. Owens was away from the city of Seattle, to-wit, on or about the 8th day of September, 1897, the said Wiestling executed, together with said Blum and wife, what purports to be a written lease for said premises for the period of eighteen months from and after the 15th day of September, 1897, at the monthly rental of $50 per month. Said instrument, in addition to the signatures of the Blums, is signed, "John R. Owens, by F. B. Wiestling, his agent." At the trial, appellants offered this written instrument in evidence, together with the purported assignment thereof to them, in support of their contention that they were lawfully in possession of the premises by virtue of the terms of such instrument. Objection was made to the introduction of the so-called lease upon several grounds, some of which were for irregularities appearing upon the face of the instrument itself. But the most serious objection was that no authority was shown for Wiestling to execute the instrument in behalf of respondent. The court sustained the objection, and refused to admit the offered evidence. It appears from the evidence that Wiestling, who testified at the trial, never had any direct communication with respondent, and any authority he may have had in the premises he derived through the aforesaid brother of respondent, the said H. K. Owens. Wiestling does not claim that he had specific authority to execute this lease, but claims to have acted under what he understood to be a general authority to look after the leasing of this property. He testified that upon the return of H. K. Owens to Seattle he showed him this written instrument, and that Owens made no objection to it. In this particular Owens contradicts him. Upon this point Owens testified as follows:

"I was very much surprised to learn that he had given a lease because I had written him particularly not to make a lease, at the prevailing low rates of rent at that time, because the Klondike excitement had caused an increase in business here, and rents were advancing, and I criticized his giving the lease. I told him I could not sustain it. I told him he had no authority to give the lease. And he said 'Well, he had general authority to do the best he could in renting it.' And I told him that I would permit the tenant to stay there as a month to month tenant, but I would notify him that the lease was invalid, and at the proper time I would take steps to cancel the lease or retake possession."

This was about the first or second day of October, 1897, —less than a month after the execution of the so-called lease. Whatever may have occurred between Owens and Wiestling at that time, however, Owens testifies that the next day he notified Blum that the lease Wiestling had given was invalid, and that he (Blum) was only a month to month tenant. Later, about the middle of the same month, he notified the Blums in writing to the same effect. This evidence is uncontradicted. Thereafter the Blums paid rent monthly at the rate of $50 per month until notified that respondent desired to terminate their tenancy as aforesaid. It is contended by appellants that the acceptance of rent at the same rate named in the written instrument amounts to a ratification of the terms of the lease, even though it may have been unauthorized in its inception. We think not, under the circumstances shown in the evidence. The Blums were plainly told by Owens, almost immediately upon his discovery that such a paper had been signed by Wiestling, that it was without authority, and that they could remain as tenants from month to month only. They continued thereafter to pay monthly rent until notified in a proper manner for the termination of a month to month tenancy. Acceptance of rent under

those circumstances cannot be held to be a ratification of the act of Wiestling. We think, therefore, that sufficient foundation was not laid for the introduction of the offered exhibit, and the court properly excluded it.

Having thus disposed of the so-called lease itself, the purported assignment thereof was likewise incompetent.

Since we find no error in the record, the judgment is affirmed.