## CHARLES A. PATTERSON v. WILLIAM H. WILSON *et. al.*

(Filed July 6, 1901.)

‡HOMESTEAD ENTRY—Valid, When—Demurrer, Properly Sustain-
ed, When. The undisputed facts in this case show that Patter-
son entered Oklahoma about the 25th of February, 1889, and re-
mained therein until March 28, 1889; that during a portion of that
period he was encamped in the vicinity of the land in contro-
versy, and while there formed the intention of taking and enter-
ing a tract of land in that immediate neighborhood; that he was
in said territory without license or authority to either enter or re-
main there, and that he left said territory on March 28, 1889, and
remained outside of the borders until twelve o'clock noon, April
22, 1889. Held, that under the provisions of the act of congress
of March 2, 1889, which among other things provides that: "Until
said lands are opened for settlement by proclamation of the
President, no person shall be permitted to enter upon and occupy
the same, and no person violating this provision shall ever be
permitted to enter any of said lands or acquire any right there-
to," the plaintiff was disqualified from making a valid homestead
entry and acquiring any title to said land, and that the court,
therefore, properly sustained the demurrer to the petition on the
ground that the plaintiff's petition did not state facts sufficient to
constitute a cause of action.

(Syllabus by the Court.)

*Error from the District Court of Oklahoma County; before*

*C. F. Irwin, Trial Judge.*

*Keaton & Kearful,* for plaintiff in error.

*A. B. Hammer,* for defendants in error.

### STATEMENT OF FACTS.

It appears from the record in this case that on May 4,
1889, one Samuel W. Ball made homestead entry No. 937 on
lots 1 and 2 and the south half of the northeast quarter of
section 6, township 11, north, range 2 west. That on May

15, 1889, Patterson filed an affidavit of contest against said entry, alleging that Ball was in the Oklahoma country between March 23, and twelve o'clock noon, April 22, 1889, and that Patterson was the first actual settler upon said land. A hearing was had before the local land office, but before trial Patterson dismissed that part of the contest that alleged Ball's presence in the territory prior to twelve o'clock noon, April 22, 1889. The local land office found that Patterson had sustained his charge of prior settlement; but found that he was disqualified to enter the tract embraced in Ball's homestead entry for the reason that he had entered Oklahoma territory about the 25th of February, 1889, and had remained there until March 28, 1889. That during a portion of that time he was encamped in the vicinity of the tract of land in controversy, and that while encamped there he formed the intention of taking a tract of land in that immediate neighborhood. That he had no license from any one in authority to enter said territory or to remain there, and that leaving said territory about March 28, 1889, he remained outside until twelve o'clock noon, April 22, 1889, when he entered with the rest of those entering at that time, and on the afternoon of that day settled on the tract in controversy.

Upon these facts the local land office recommended that the contest of Patterson be dismissed and Ball's homestead entry held intact. From this decision Patterson appealed to the commissioner of the general land office. Pending that appeal, on June 26, 1891, Ball relinquished his entry, and William H. Wilson made homestead entry No. 594 for said tract of land on the same day. The commissioner of the general land office found the facts substantially the same as the local land office, with the additional finding

that Patterson went into the Territory, as stated, to find his son, who was supposed to be in the Cherokee strip; and that while there, having a team, he was engaged in moving other campers. That he determined while there to enter the land as soon as it was opened to settlement, but had not fixed upon any particular tract. The commissioner of the general land office reversed the decision of the local land office, and held that Patterson was a qualified entryman. From this decision an appeal was taken to the secretary of the interior, who reversed the decision of the commissioner of the general land office, sustained the findings of the local land office, and found from the evidence that Patterson was disqualified to acquire title to said land as a homestead claimant, and awarded said land to William H. Wilson. Subsequently a patent was issued by the United States to Wilson for said land. That J. B. Montgomery and A. C. Thorne claim a certain interest in and to said land by virtue of a mortgage which was executed by Wilson to them. Patterson filed his petition in the district court of Oklahoma county against defendants in error, in which he alleged the foregoing facts, and sought to have a resulting trust declared in his favor against Wilson, and prayed that Wilson be decreed to hold the legal title to said tract of land in trust for the use and benefit of Patterson, and the defendants, Montgomery and Thorne, be divested of any liens they may have upon said land and for costs of this action.

To this petition the defendants demurred on the ground that it did not state facts sufficient to constitute a cause of action. The court sustained the demurrer to said petition, and the plaintiff having elected to stand upon said petition,

judgment was rendered for the defendants at the cost of the plaintiff. From this judgment the plaintiff appeals.

Opinion of the court by

HAINER, J.: The undisputed facts in this case show that Patterson entered Oklahoma about the 25th of February, 1889, and remained therein until March 28, 1889; that during a portion of that period he was encamped in the vicinity of the land in controversy, and while there formed the intention of taking and entering a tract of land in that immediate neighborhood; that he was in said territory without license or authority to either enter or remain there, and that he left said territory on March 28, 1889, and remained outside of the borders until twelve o'clock noon, April 22, 1889. Upon these uncontroverted facts the secretary of the interior found that Patterson was disqualified from making a valid homestead entry and acquiring any title to said land. We think the ruling of the secretary of the interior was correct. The language of the act of March 2, 1889, is clear and unmistakable in its terms. It provides:

"Until said lands are opened for settlement by proclamation of the president, no person shall be permitted to enter upon and occupy the same, and no person violating this provision shall ever be permitted to enter any of said lands or acquire any right thereto."

There is no exception to this rule. The rule in regard to the interpretation of a statute is well settled, that where the words and language used in the act are free from doubt and ambiguity, and express clearly, plainly and distinctly the intent of the law-making power, there is no occasion to resort to other means of interpretation. It is never per-

missible to interpret that which has no need of interpretation. The language of the statute itself furnishes the best means of its own interpretation.

In American and English Ency. of Law, vol. 23, page 298, the rule is thus stated:

"If the language is clear, and admits of but one meaning, there is no room for construction. It is not allowable to interpret that which has no need of interpretation. In such a case any departure from the language used would be an unjustifiable assumption of legislative power."

Sutherland in his work on Statutory Construction, section 237, says:

"It is beyond question the duty of courts in construing statutes to give effect to the intent of the lawmaking power, and seek for that intent in every legitimate way. But, first of all in the words and language employed; and if the words are free from ambiguity and doubt, and express plainly, clearly and distinctly the sense of the framers of the instrument, there is no occasion to resort to other means of interpretation. It is not allowable to interpret what has no need of interpretation."

It is only in the construction of statutes whose terms give rise to some ambiguity, or whose grammatical construction is doubtful, that courts can exercise the power of controlling the language in order to give effect to what they suppose to have been the real intention of the law-makers. (*Newell v. People,* 7 N. Y. 97; *Bartstow v. Smith,* Walk. Ch. 394; *Bidwell v Whitaker,* 1 Mich. 469; *McCluskey v. Cromwell,* 11 N.Y. 593.)

So it has been held that the· legislature must have intended to mean what it has plainly expressed, and this excludes construction. The clear language of the statute can be neither restrained nor extended by any construction of supposed wisdom or policy. (*Hadded v. Collector,* 5 Wall. 107; *Hyatt v Taylor,* 42 N. Y. 259; *Horton v. School Com'rs,* 43 Ala. 598; *Com. v. Shoop,* 1 Woodw. Dec. 123; *In re Powers,* 25 Vt. 265, *State v. Liedtke,* 9 Neb. 468: *Reynolds v. Holland,* 35 Ark. 56; *Miller V. Childress,* 2 Hump. 320.)

In *Fitzpatrick v. Gebhart,* 7 Kan. 35, it was said by the supreme court of that state that:

"The true way for courts to ascertain the legislative intention is to observe and to be guided by the language of the statute, and, if this be clear and free from ambiguity, there is nothing left for interpretation; for when the act is conceived in clear and precise terms, when the sense is manifest and leads to nothing absurd, there can be no reason to refuse the sense which it naturally presents. To go elsewhere to obtain something to enlarge its meaning is to endeavor to elude it. In construing this statute, if the court should adopt the theory of the defendant below, it would assume the extraordinary power of supplying a supposed omission, or rather of injecting into the statute a new term or provision. Such is not the office of interpretation. The office of interpretation is not to put a sense into language, but to ascertain the sense already existing there."

The manifest purpose and scope of said act was to prohibit every person who was within the limits of the entire country to be opened to settlement after the passage of the act of March 2, 1889, and prior to the opening of the country to settlement at noon on April 22, 1889, from ever entering or acquiring title to any of said lands under the homestead

laws.   But even if the doctrine of advantage, which we do
not approve, is applied to the interpretation of this statute
we think clearly that Patterson gained a decided advantage
over those persons who remained without the limits of the
country to be opened to settlement during the prohibited
period.   The fact that Patterson remained in the prohibit-
ed country after the passage of the act of March 2nd, and
several days after the proclamation was issued, and that
he was in the immediate vicinity of the land in controversy,
is *per se* an advantage over all persons who remain outside
of the territory during the prohibited period.

In *Calhoun v. Violet,* 137 U. S. 63, Mr. Justice White in
discussing this subject said:

"The fact that the plaintiff had entered the territory
prior to the time fixed by the statute and the proclamation
of the president having been conclusively determined, it
follows inevitably, as a legal result, that an entry of land
made under such circumstances was void, and that the rul-
ing by the land department so holding was correct."

We think the demurrer to the petition was properly
sustained on the ground that the petition did not state
facts sufficient to constitute a cause of action.   The judg-
ment of the district court is affirmed, at the cost of plaintiff
in error.

Irwin, J., having presided in the court below, not sit-
ting; all the other Justices concurring.