(May 27, 1904.)

## HUNTER v. PORTER.

### [77 Pac. 434.]

NOTICE TO PAY RENT OR SURRENDER POSSESSION—OPTION TO TERMINATE LEASE—UNLAWFUL DETAINER—DEFENSES IN UNLAWFUL DETAINER—COUNTERCLAIM—CROSS-COMPLAINT—WHEN EACH AVAILABLE—BREACH OF COVENANT BY LESSOR—IMPLIED COVENANT OF FITNESS OF PREMISES.

1. A notice by the landlord to his tenant under sections 5093 and 5094, Revised Statutes, requiring him to pay rent due or surrender possession, describing the premises and naming the amount due, is a substantial compliance with the statute and is held sufficient.

Points decided.

2. Where the lessor by the terms of a lease reserves to himself an option to *terminate* the lease upon service of a thirty days' notice after breach by the tenant of some covenant thereof, he is not thereby precluded from pursuing his remedy under section 5093, Revised Statutes, in case the tenant fails to pay rent when due.

3. The service of notice and commencement of action under sections 5093 and 5106, Revised Statutes, for failure to pay rent when due, does not primarily terminate or forfeit the lease, but a payment of the rent together with interest, damages found and costs at any time within five days after judgment keeps the lease alive and saves it from forfeiture.

4. Chapter 4 of title 3 of the Code of Civil Procedure, Revised Statutes of 1887, provides a "Summary Proceeding for Obtaining Possession of Real Property," and an action prosecuted thereunder by the landlord for an unlawful detainer by the tenant is not subject to counterclaim or cross-complaint the same as ordinary actions.

5. In an action for unlawful detainer a claim for unliquidated damages arising out of a breach of a covenant made by the lessor is not a proper matter for counterclaim or cross-action under sections 4184 and 4188, Revised Statutes.

6. A cross-complaint under section 4188, Revised Statutes, must relate to or depend upon the contract or transaction on which the main case is founded or affect the property to which the action relates, but does not necessarily seek its relief against all or any of the original plaintiffs or defendants.

7. A counterclaim, while it must exist in favor of the defendant and against the plaintiff, may, in other respects, go further than a cross-complaint, and, if the cause of action arose on contract may set forth any other cause of action arising on a contract as a counterclaim thereto.

8. Where an agreement of lease refers to the premises demised as a "Cold Storage Building" not merely as a description of the situs but as a designation of its character, and contains a stipulation restricting its use to such articles as are ordinarily required to be stored for preservation, in such a place as is commonly known and designated as a "cold Storage Building," an implied warranty of fitness for such use and purpose will arise therefrom.

(Syllabus by the court.)

APPEAL from District Court in and for Latah County. Honorable Edgar C. Steele, Judge.

From a judgment for plaintiff and an order denying defendant's motion for a new trial, defendant appeals. Judgment for rents and possession of premises and costs is affirmed.

I. N. Smith, for Appellant.

It is first contended that the court erred in not granting the nonsuit. The thirty days' notice provided in the lease was not given; hence the lease has never terminated. The action for "unlawful detainer" is based upon the idea that the relation of landlord and tenant existed, but through some event—lapse of time, or breach of condition and notice—the tenancy has terminated, and notwithstanding the rights of the tenant have ceased, he still continues in possession without the consent of the landlord. There is nothing in this case that shows that the tenancy has ever terminated. The parties by their contract, fixed the time of notice of election to terminate the same, and this election was never exercised. This being true, the cause could not be maintained as an action of unlawful detainer. The time stipulated in this lease was one of the considerations thereof. Notice for that period was necessary. (18 Ency. of Law, 2d ed., pp. 113, 630; *Pickard v. Kleis,* 56 Mich. 604, 23 N. W. 329; *Bauer v. Knoble,* 51 Minn. 358, 53 N. W. 805; *King v. Connolly,* 51 Cal. 181; *Langley v. Ross,* 55 Mich. 163, 20 N. W. 886.) The discussion heretofore indicated as to the covenant in this lease relative to the fitness of the premises is sustained by *Wolfe v. Arrot,* 109 Pa. St. 473, 1 Atl. 333. The offer to prove the circumstances surrounding the execution of this lease, the relation of the parties, each to the other, and to the subject matter of the lease, the representations at the time of the execution of the contract, and the offer of the written document shown, were proper. (*Mayer v. Goldberg et al.,* 116 Wis. 96, 92 N. W. 556 (court is required, etc.); *Chicago R. I. & P. Ry. Co. v. Denver & R. G.,* 143 U. S. 596, 12 Sup. Ct. Rep. 479, 36 L. ed. 277; *Winona & St. Paul L. Co. v. Minnesota,* 159 U. S. 531, 16 Sup. Ct. Rep. 83, 40 L. ed. 247.) The construction of the instrument, as given by Porter heretofore set out, to the effect that "cold storage building" was an expression used to call for and require a frost-proof building, was not denied; that shows the construction which the parties placed on this document. This controls in cases of this kind. In addition, the discussion heretofore has amply shown that the parties intended this building should be a frost-proof building. (*Top-*

*liff v. Topliff,* 122 U. S. 121, 7 Sup. Ct. Rep. 1057, 30 L. ed.
1110.) The true intention of the parties controls. (*Home of
the Friendless v. Rouse,* 8 Wall. 437, 19 L. ed. 495; *Porter v.
Allen,* 8 Idaho, 358, 69 Pac. 105.) Hunter undertook to do
what the lease called upon him to do, i. e., to "complete" the
construction of the building so it would be fit for use as a
storage house. Not having done so, he is liable for the loss
which followed, which was attributable to his failure to perform
the plain requirements of the contract. (*Swift v. East Water-
loo Hotel Co.,* 40 Iowa, 322; *McCoy v. Oldham,* 1 Ind. App.
372, 50 Am. St. Rep. 208, 27 N. E. 647; *Culver v. Hill,* 68
Ala. 66, 44 Am. Rep. 134; *Young v. Collett,* 63 Mich. 331, 29
N. W. 850; *Bentley v. Taylor,* 81 Iowa, 306, 47 N. W. 59, 9
L. R. A. 772; *Vaughan v. Matlock,* 23 Ark. 9; *Tyler v. Disbrow,*
40 Mich. 415; *Lane v. Pacific & I. N. Ry. Co.,* 8 Idaho, 230, 67
Pac. 566; *La Farge v. Mansfield,* 31 Barb. 345.)

Forney & Moore and G. W. Suppiger, for Respondent.

The failure of the appellant to comply with the written de-
mand to pay rent or surrender possession of the premises for a
period of three days after service of the written demand oper-
ated as a forfeiture of the estate of the tenant. (Rev. Stats.
1887, secs. 5093, 5106; *Brummagim v. Spencer,* 29 Cal. 662.)
The pleading of the appellant designated a "cross-complaint"
is a counterclaim, under the statutes, the same being an alleged
cause of action existing in favor of the appellant, who was de-
fendant below, and against the respondent, who was plaintiff
below. (*Stevens et al. v. Home Savings etc. Assn.,* 5 Idaho,
741, 51 Pac. 986.) This being a special proceeding for the
summary possession of real property, the counterclaim set up
in appellant's alleged cross-complaint is not permissible.
(*Moroney v. Hellings,* 110 Cal. 219, 42 Pac. 560; *Kelly v.
Teague,* 63 Cal. 68; *Van Every v. Ogg,* 59 Cal. 563; *Warbur-
ton v. Doble,* 38 Cal. 619; *Phillips v. Lodge No. 6, F. & A. M.,*
8 Wash. 529, 36 Pac. 476; *Ralph v. Lomer,* 3 Wash. 401, 28
Pac. 760; *McSloy v. Ryan,* 27 Mich. (Cooley) 109.) Even
if the description of the building contained in the lease
should be held to be a warranty of the fitness of the build-

ing demised, and if, before storing apples therein, the building was known, by the appellant, to be unfit for the storage of apples, and the appellant proceeded to store his apples therein and suffered loss by reason of the unfitness of the building, he is guilty of contributory negligence and cannot recover, or at least the law of avoidable consequences should apply. (1 Sedgwick on Damages,. sec. 209.) This brings us to a consideration of a proposition of law which, in our opinion, is decisive of quite, if not all, of the errors assigned by the appellant. Our laws relating to unlawful detainer were taken from the statutes of California, and while the California statutes relating to this subject that have been construed by the court in the citations to follow have not been couched in the same language, they were identical in scope,. object and intent. In the case of *Warburton v. Doble,* 38 Cal. 619, the supreme court of California in 1869, through Mr. Justice Rhodes, said: "A setoff or counterclaim is not admissible in actions of this class, and it makes no difference whether it be a demand for money or a previous forcible entry of the plaintiff." This action was in forcible entry and detainer, but was prosecuted under the same summary proceedings for the possession of the property that the respondent prosecuted the case at bar in the lower court. (*Kelly v. Teague,* 63 Cal. 68; *Borden v. Sackett,* 113 Mass. 214; *Moroney v. Hellings,* 110 Cal. 219, 42 Pac. 560.)

AILSHIE, J.—On the twenty-third day of August, 1901,. the plaintiff and defendant entered into a written agreement of lease, whereby the plaintiff let to the defendant a cold storage building in the city of Kendrick, Latah county, for a period of one year. It was agreed that in addition to doing certain work and making certain improvements the lessee should pay the sum of $300 as rental for the premises; $100 to be paid on or before the fifteenth day of September, 1901, and $200 on or before the fifteenth day of January, 1902. Defendant, the lessee, entered into possession of the premises and paid the first installment of rent but failed to make the payment which fell due January 15, 1902. After the defendant made default in the payment of rent, and on the eighteenth day of January, .

1902, the plaintiff served notice on him, under the provisions of subdivision 2 of section 5093 and section 5094, Revised Statutes, requiring defendant to pay the rent due or surrender possession of the premises. The defendant neglected and refused to pay the rent or to deliver the possession of the premises, and on the twenty-fourth day of April, 1902, the plaintiff commenced his action in the district court in and for Latah county, alleging his cause of action in the usual form, charging the defendant with an unlawful detainer of the property and premises after default in payment of rent and the service of the statutory notice for the payment of the same or delivery of possession. The defendant answered this complaint setting up as an exhibit a copy of the lease and specially pleading certain covenants and options therein contained, and, after pleading several separate defenses, filed a cross-complaint alleging that the plaintiff had violated and broken various of his covenants with reference to the construction and condition of the premises demised, and that by reason thereof the defendant, lessee, had sustained damages in the aggregate amount of $2,050, and prayed judgment against the plaintiff for that sum. The case went to trial and the evidence was introduced both on the part of the plaintiff and defendant, and findings of fact and conclusions of law were made and filed, finding that the defendant was guilty of unlawful detainer, and also finding against him on all the allegations of his cross-complaint. Thereupon judgment was entered in the usual form for the rents and damages and for cancellation of the lease and the restoration of the plaintiff to the possession of his premises.

Defendant prepared and had settled his statement and bill of exceptions and thereafter moved for a new trial, and has appealed from the judgment and the order denying his motion for a new trial.

In the first place it is contended that the notice served by plaintiff upon defendant for the payment of rent or delivery of possession is not a sufficient notice under sections 5093 and 5094, Revised Statutes. We have carefully examined the notice and compared it with the requirements of those provisions, and are satisfied from such examination that it is a sufficient and substantial compliance therewith. The notice is as follows:

"To L. A. Porter, Tenant in Possession:

"You are hereby required to pay the rent of the premises hereinafter described, and which you now hold possession of, amounting to the sum of two hundred dollars, being the amount now due and owing to me by you as the balance of the rent due for the term from the first day of September, A. D. 1901, until the first day of September, 1902, or deliver up possession of the same to me, or I shall institute legal proceedings against you to recover possession of said premises, with treble rent.

"Said premises are situated in the Town of Kendrick, Latah County, Idaho, and are described as follows:

"All that certain brick storage house situate in block B, Addison's addition to the town of Kendrick, Idaho, designated and known as 'Hunter's Cold Storage.'

"Dated at Kendrick, Idaho, January 18, A. D. 1902.

"Respectfully,

(Signed) "LEWIS HUNTER."

The next and most serious contention urged by appellant is that this action could not be maintained under the express terms of the lease and the statutes applicable thereto until a thirty days' notice had first been given notifying the tenant of the lessor's intention to exercise his option to terminate such lease, and thereafter, and upon the expiration of the thirty days' notice, the service of a further notice of three days to quit and surrender the premises. This position rests upon the following provision found in the lease: "And it is further covenanted that if said payments of rent or either of them, whether the same be demanded or not, are not paid when they come due, or if said leased premises be appropriated to any other purpose or use than as herein specified, except by written consent, or waste of any kind shall be made or committed thereon, or if any part of said demised premises be underlet without the consent of the said first party, as herein provided, or if this lease assigned by act of the said second party or by operation of law, or if said party of the second part shall fail or neglect to perform any of the covenants by him to be kept and performed, then said party of the first part shall have the right, at his option (and such right is hereby expressly reserved by him) to termin-

ate said lease, and any and all rights, interest or estate the said party of the second part may have in or to said premises or any portion thereof, by giving said lease or the occupant of said premises thirty days' notice in writing, signed by the first party or his agent, or attorney of his intention to so terminate said lease."

It is argued by the appellant that since the lessor has never served a thirty days' notice in the exercise of this option to terminate the lease and has in fact never terminated the lease under that option reserved to himself in the lease, that the tenant was therefore in possession by the permission of his landlord; and that the service of the thirty days' notice could not operate as a withdrawal of such permission and convert him into an unlawful detainer. The respondent, on the other hand, urges that this stipulation did not take from the landlord his right to pursue the statutory remedy in case of a default in payment of rent, and that even though the tenant failed to pay the rent when due, the landlord was not obliged to exercise his option to *terminate* the lease unless he should see fit so to do. In other words, he contends that the lessor might pursue the statutory remedy and leave the lessee to the exercise of his statutory privilege of paying the rent due and thereby saving the lease from lapse or forfeiture. Plaintiff contends that if he chose not to exercise his option and to be more lenient in this respect toward the lessee than he might have been, that the lessee had no right of complaint.

We are unable to see wherein this stipulation is in any way violated by the landlord pursuing his statutory remedy as he has done in this case. In such a proceeding as this it is not contended that the lease is terminated, and it is not upon that theory that such an action founded upon failure to pay rent is prosecuted. Here the landlord seeks primarily to secure payment of the rent due, and, as an alternative, in case the rent is not paid, to secure possession of the premises. The law has provided that the tenant cannot retain the rental value of the premises and also the possession of the premises after completion of the service of the statutory notice. It should be observed that the stipulation over which this controversy arose

·was not a stipulation extending the time for payment of rent, neither does it grant to the tenant any immunity from the payment thereof. It simply gives to the lessor the right, upon breach of any of the covenants on the part of the lessee, to absolutely terminate the lease, but provides that in case he shall choose to exercise this option, he shall give a thirty days' notice of such election. This is presumably for the purpose of giving the tenant an opportunity to secure other premises, and in the event of the exercise of such option the tenancy would not be terminated until the expiration of the thirty days, and the tenant would not be an unlawful detainer until a further notice of three days should be served upon him requiring him to vacate. We think the plaintiff pursued the proper remedy in this case.

The other questions argued upon this appeal present to our minds an unusual and novel situation in the matter of practice and procedure; and this is accentuated by the fact that the party who urges them is the lessee. No objection was made by the plaintiff in the lower court to the consideration of the cross-complaint, nor was any question raised as to defendant's right to introduce his evidence in support thereof. The plaintiff, however, succeeded upon the trial as to all the issues raised and defendant has appealed. In this court the plaintiff, who is respondent here, argues as one of the reasons why the judgment should be sustained that under the statute and decisions of the courts the defendant had no right to be heard either upon a counterclaim or cross-complaint in the lower court, and that therefore whatever error might have been committed against the defendant in the introduction of evidence on his cross-complaint or as to the findings of the court thereon, cannot become ·grounds of reversal in this court. The appellant has neither raised nor argued the point in this court that the plaintiff in the lower court having neglected to present these objections there, cannot be heard to urge them here. If the plaintiff had lost in the lower court and were the appellant here we should certainly not permit him to raise this question for the first time in this court on appeal; and, indeed, if the consideration of that issue here could result in prejudicing the defendant in any manner,

upon his appeal we would not consider it as here presented. Entertaining, however, the view we do of this case, we are of the ·opinion that it is our duty to consider and pass upon the defendant's right to be heard upon his cross-complaint. If after an examination of the many errors assigned by appellant both as to the construction of the lessor's covenants contained in the lease and the introduction of evidence upon the cross-complaint, we should find error and reverse the judgment and remand the case for a new trial, this question might then be raised by the plaintiff and the defendant would be in a worse position upon a new trial than he will be after our having settled this issue.

Chapter 4 of title 3 of the Code of Civil Procedure, Revised Statutes of 1887, treats exclusively of forcible entry and unlawful detainer and the remedies therefor. The title to that chapter is: "Summary Proceedings for Obtaining Possession of Real Property." A study of the various provisions of this chapter of nineteen sections satisfies us that it was the purpose of the legislature to provide a summary method whereby a landlord might collect his rent, or, in default thereof, obtain possession of his property. The statute requires that both the complaint and the answer shall be verified, and section 5102 provides that "If, at the time appointed, the defendant do not appear and *defend,* the court must enter his default and render judgment in favor of the plaintiff as prayed for in the complaint." This section seems to only contemplate a defense to the charge of forcible or unlawful detainer and does not appear to provide for the defendant seeking affirmative relief or becoming a cross-actor in such action. Section 5106 provides the character of judgment that may be entered and the manner and method of enforcing the same; and every provision of that section looks to the trial of only one issue, namely, whether the defendant is either a forcible or unlawful detainer of the premises. To allow the issue of unliquidated damages growing out of an independent covenant contained in the lease and made by the lessor to be set up either by way of cross-complaint or counterclaim in such an action would frustrate the purposes and object of the statute, and, at the same time, give the tenant

an advantage over the landlord in that he would be allowed to both retain the premises and the rental value thereof while litigating with his landlord a minor issue as to some real or fancied grievance which he might never be able to establish in court. If a defense of this kind could be maintained, a landlord would never know how much rent was due him or how much he could safely demand. In other words, so soon as his tenant began to complain of some real or imaginary grievance growing out of the terms of the lease, the landlord would be unable to say how much was due him on rents from his tenant until a court had passed upon the tenant's claim for damages. Such a claim could generally be expected to appear as an issue in the case. This question has been frequently considered by the courts, and in one of the late authorities on the subject—*Phillips v. Port Townsend Lodge No. 6, F. & A. M.,* 8 Wash. 529, 36 Pac. 476—the supreme court of Washington say: "The very object the legislature had in view in enacting the statute under which the appellants were proceeding was to afford a summary and adequate remedy for obtaining possession of premises withheld by tenants in violation of the covenants of their lease, and this object would be entirely frustrated if tenants were permitted to interpose every defense usual or permissible in ordinary actions at law. The statute prescribes that a tenant is guilty of unlawful detainer after default in the payment of rent pursuant to the lease or agreement under which the property is held, and three days' notice in writing requiring its payment, or possession of the property, shall have been served upon him (Laws 1891, p. 180) ; and, when these facts are made to appear to the satisfaction of the court or jury upon the trial, the landlord is entitled to judgment for restitution of the premises, and also to judgment declaring the forfeiture of such lease or agreement, together with damages and the rent found due. In such proceedings counterclaims and offsets are not available."

In *Ralph v. Lomer,* 3 Wash. 401, 28 Pac. 763, the same court said: "We have been cited to no cases holding that, in an action for an unlawful detainer, a counterclaim or setoff is admissible. On the contrary, the courts seem to entertain the oppo-

site doctrine generally, and lay down the rule that no such defense can be interposed."

These cases have both been approved and followed in *Owens v. Swanton,* 25 Wash. 112, 65 Pac. 921, and *Carmack v. Drum,* 27 Wash. 382, 67 Pac. 808. In *Owens v. Swanton* the supreme court approved the action of the trial court in sustaining a demurrer to a cross-complaint in a similar case. The same doctrine seems to have been maintained in California by a uniform line of authorities from *Warburton v. Doble,* 38 Cal. 619, down to *Moroney v. Hellings,* 110 Cal. 219, 42 Pac. 560. In *McSloy v. Ryan,* 27 Mich. 109, Judge Cooley says: "The defendant offered evidence to show that complainant had not performed his covenants in the lease in regard to improvements and repair. As these covenants were independent of the covenant to pay rent, and this proceeding was not one in which, even if the amount of rent was in issue, there could be any deduction of offsets, or by way of recoupment, the court did not err in rejecting this evidence."

Appellant contends that under sections 4183 and 4184, Revised Statutes, *Stevens v. Home Savings etc. Assn.,* 5 Idaho, 741, 51 Pac. 779, 986, and *Murphy v. Russell,* 8 Idaho, 151, 67 Pac. 427, it was not only his legal right, but his duty, to present his cross-complaint in this case, and have it litigated in this action, and that by failure to do so he would have lost his remedy. He also admits that, in an action of this kind, there cannot properly be any counterclaim. In his reply brief he says: "The matters set forth in the cross-complaint are not counterclaims. What claim is it possible to 'counter' against an unlawful act of any nature—whether it be an 'unlawful' detainer, an 'unlawful' assault, an 'unlawful' battery, an 'unlawful' attempt to murder, an 'unlawful' libel or slander? It is readily seen that it is absolutely impossible to have a counterclaim to an unlawful act, hence the matters set up in the cross-complaint are not counterclaims."

In this case where there was only one plaintiff and one defendant, if the facts here pleaded could not be set up by way of counterclaim, we fail to see how the same facts could be pleaded by calling them a cross-complaint. The scope of plead-

ing for a cross-complaint under section 4188 is not as comprehensive as for a counterclaim under section 4184. A cross-complaint under section 4188 must relate to or depend upon the contract or transaction on which the main case is founded, or affect the property to which the action relates, but does not necessarily seek its relief against all or any of the original plaintiffs or defendants. On the other hand, a counterclaim, while it must exist in favor of the defendant and against the plaintiff or plaintiffs, may go further, and, if the cause of action arose on contract, may set forth any other cause of action arising on contract as a counterclaim thereto. As to subject matter, the counterclaim is the more comprehensive and liberal, but for relief against individual plaintiffs or defendants or bringing in new parties against whom a defendant claims relief growing out of the subject matter of the action, the cross-complaint is the available procedure. (See *Stevens v. Home Sav. etc. Assn.,* *supra.*)·

Aside from the fact that the legislature have provided by the unlawful detainer act a summary remedy which they did not mean to be subject to the same defenses, counterclaims and cross-actions as ordinary litigation, such a defense as the one here interposed does not, strictly speaking, "arise out of the transaction set forth in the complaint." A tenant does not become primarily an unlawful detainer upon breach of the covenant in the lease to pay rent, but rather upon failure to pay after demand by a legal notice in the statutory time. This constitutes him "an unlawful detainer" of the premises; this he would never become but for service of the notice, although he should never pay rent. Indeed, the landlord might forego this remedy and maintain his action on the contract for the payment of rent. It cannot truly be said that a breach of a covenant by the landlord to improve or repair the demised premises arises out of or is connected with a failure to pay rent after service of notice to pay or surrender possession. A breach of a covenant made by the landlord does not result in making him guilty of an "unlawful" act in the same sense that a tenant becomes guilty of "unlawful detainer" upon failure to pay rent after notice. A claim for unliquidated damages arising out of

a breach of a covenant on the part of the lessor is neither a proper matter for counterclaim nor cross-complaint as authorized by sections 4184 and 4188. The matters set up by defendant's cross-complaint were not proper matters to be litigated in the case, and the findings and conclusions of the trial court thereon will not preclude the defendant from litigating any such claim as he may have for damages in an independent action.

The lease pleaded by the cross-complaint was for a "cold storage" building in the town of Kendrick, which was in course of construction at the time the lease was executed, and was to be completed in "as short time as possible" thereafter. The premises were described as "The cold storage building now in course of construction, on lots 1 and 2 of block 'B' in Addison's addition to the town of Kendrick, Idaho, and known as the Hunter Cold Storage House." The lease also contains this provision: "The party of the second part agrees that he will use said cold storage building only for the purpose of handling fruit and produce, and not for hay, grain or feed." Appellant maintains that these various designations and references to the demised premises as a "cold storage building," read in connection with the stipulation that the premises should not be used by the tenant except for the handling of fruit and produce, from which hay, grain and feed were excluded, is an implied warranty that the building when completed should be such a structure as would be suitable for the storage and preservation of fruits at all times during the year for which it was let. We are of the opinion that the appellant is correct in this contention. It is clear to us from an examination of the instrument itself that the lessor knew and understood the purpose for which the lessee was securing the premises; and not only that, but by the terms of his lease he restricted and confined the lessee to the use of the premises for those purposes only. At the time this agreement of lease was entered into the building was not completed, and was therefore not in a condition that the tenant could enter and examine the same to ascertain whether it met all the requirements for which he was leasing it. On the other hand, the landlord by the implied terms of the lease represented the

building as a "cold storage building," and that term must be understood to have a meaning peculiar to a class or kind of building designed for the preservation and safekeeping of such articles and products as it was understood that the tenant meant to keep in the building. (*Vaughn v. Matlack,* 23 Ark. 12; *Jordan v. Dyer,* 34 Vt. 104, 80 Am. Dec. 668; *Allen v. Somers,* 73 Conn. 355, 84 Am. St. Rep. 158, 47 Atl. 653, 52 L. R. A. 106; *Railroad Co. v. Smith,* 21 Wall. 255, 22 L. ed. 513; *Lane v. Pacific & I. N. Ry. Co.,* 8 Idaho, 230, 67 Pac. 656; *Porter v. Allen,* 8 Idaho, 358, 69 Pac. 105; *Wolfe v. Arrott,* 109 Pa. St. 473, 1 Atl. 333; *Young v. Collett,* 63 Mich. 331, 29 N. W. 850.)

This was more than a location and designation of the property and amounted to a representation as to its character.

The judgment for rents and costs and possession of the property described therein will be affirmed and the defendant will not be barred by the findings of the trial court from litigating, in an independent action, any claim he may have for damages. Under all the facts and circumstances of this case as disclosed by the record, each party will be required to pay one-half of the total costs incurred by reason of this appeal.

Sullivan, C. J., and Stockslager, J., concur.

---

ON PETITION FOR REHEARING.