(May 20, 1902.)

## PORTER v. ALLEN.

[69 Pac. 105.]

DEMURRER TO COMPLAINT.—Sustaining demurrer to complaint held error.

MOTION TO STRIKE.—Sustaining motion to strike out parts of the complaint, held error. Complaint in an action for damages must contain a statement of the facts constituting the cause of action in ordinary and concise language. The facts must be sufficiently set out to apprise the defendants of what plaintiff expects to prove.

PLEADING A CONTRACT.—A contract may be pleaded *in haec verba* or according to its legal effect. It may be attached as an exhibit to the complaint, and by apt reference and allegation made a part of it with the same effect as though it were copied into the complaint.

CONSTRUCTION OF PROVISIONS OF CONTRACT.—Where it it provided in a lease that the leased property shall be returned to the lessor in as good condition as when leased—damages by elements excepted—and the property is destroyed by reason of the lessees banking fire in the furnaces of the leased property and failing to keep a watchman as stipulated in the lease, the lessees are liable for the value of the property thus destroyed.

SAME.—Where a lease provides that in case of a breach of its provisions, and the continuance thereof for ten days, such breach and continuance shall terminate the lease, and it is further stipulated in such event that all improvements and machinery should inure to and be the property of the lessor, and the mill was burned by reason of the lessee's failure to keep a watchman as provided in said lease, the lessees are liable for the value of the mill so burned, and cannot relieve themselves of such liability by turning over to the lessor the ashes and ruined machinery of such mill as liquidated damages.

INTENTION OF PARTIES.—The intention of parties to a contract should be ascertained if possible and given effect.

CONSTRUCTION OF CONTRACT.—Where it is agreed by lessees to keep a watchman during the active operations of the mill, and the mill is run in the daytime and fire banked in the furnaces for the night, it is the duty of the lessees to keep a watchman during the night.

(Syllabus by the court.)

APPEAL from District Court, Nez Perces County.

I. N. Smith and George W. Tannahill, for Appellant.

The covenant to repair is a general covenant, and as binding on the respondents on the facts shown, because under that covenant they must rebuild if the loss by fire was caused by human agency, either on the part of themselves or servants or of a stranger. (*Polack v. Pioche,* 35 Cal. 416, 95 Am. Dec. 115, and note; citations under 2 Notes on Cal. Cases; *Abby v. Billups,* 25 Miss. 618.) The complaint here, however, shows that "human agency" which caused this fire to be directly attributable to defendants. Under such state of facts, there is no case which exempts them. (See *Porter v. Tull,* 6 Wash. 408, 33 Pac. 965, 22 L. R. A. 613, collating cases.) In *United States v. Clark* 94 U. S. 53, 24 L. ed. 65, "a covenant in a lease that the tenant shall keep the premises in good order, and deliver the same in as good order as they are now, on the expiration of the lease, binds the tenant to rebuild in case the premises should be destroyed by fire." (*Schmidt v. Pettit,* 1 McAr. (U. S.) 179; *Leavitt v. Fletcher,* 10 Allen (Mass.), 119; *Phillips v. Stevens,* 16 Mass. 238; *Fowler v. Payne,* 49 Miss. 32; *Abby v. Billups,* 35 Miss. 618, 72 Am. Dec. 143; *McIntosh v. Lown,* 49 Barb. 550; *Watner v. Hutchins,* 5 Barb. 666; *Beach v. Crain,* 2 N. Y. (2 Const.) 36, 49 Am. Dec. 369, and note; *Hoy v. Holt,* 91 Pa. St. 88, 36 Am. Rep. 659; *Meyers v. Myrell,* 57 Ga. 516; *Nave v. Berry,* 22 Ala. 382; *Ely v. Ely,* 80 Ill. 532; *Proctor v. Keith,* 12 B. Mon. 252; *David v. Ryan,* 47 Iowa, 642; *Cline v. Black,* 4 McCord (S. C.), 431; *Walton v. Waterhouse,* 2 Saund. 420.) Acts of God are such, in a legal sense, which do not happen through human agency, such as storms, lightning and tempests. (*Polack v. Pioche,* 35 Cal. 416, 95 Am. Dec. 115, and note. See 2 Notes on Cal.

Cases, 808, citing cases.) The rule is without exception that the provision for "liquidated damages" is nothing but a "penalty" in nature, regardless of what the contracting parties may have called it. (*Wilhelm v. Eaves,* 21 Or. 194, 27 Pac. 1053; 19 Cent. L. J. 285, collating cases; Pomeroy's Equity Jurisprudence, secs. 443, 444, collating cases; *Tayloe v. Sandiford,* 7 Wheat. 13, 5 L. ed. 384; *Van Buren v. Diggs,* 11 How. (U. S.) 461-477, 13 L. ed. 771; *Higginson v. Weld,* 14 Gray, 165; *Harrison v. East* 13 East, 343.) This action is on breach of covenant. (5 Ency. of Pl. & Pr. 344, note 1.) This being true, and the contract providing penal matter, the plaintiff can elect. This is a rule of universal application. (*Haggart v. Morgan,* 5 N. Y. 422, 55 Am. Dec. 350, and note; 5 Ency. of Pl. & Pr. 344, note 1; *Green v. Kelly,* 18 N. J. L. 246 (covenant to repair); *Martin v. Taylor,* 1 Wash. C. C. 1, Fed. Cas. No. 9166, citing cases; *White v. Arleth,* 1 Bond, 319, Fed. Cas. No. 17,536.) It is error for the court to strike material parts of the pleadings. (*Warren v. Stoddart,* 6 Idaho, 692, 59 Pac. 540.) The allegations asked to be stricken take out the allegation of the complaint referring to the admission of a watchman. Again, this shows the construction of the expression "during the active operation of the mill" to have been placed upon it by the parties, to mean that a watchman must be kept at night. (*State v. Cass Co. Commrs.,* 60 Neb. 566, 83 N. W. 733; *Marande v. Texas etc. Ry. Co.,* 184 U. S. 173, 22 Sup. Ct. Rep. 340; *Dunton v. Niles,* 95 Cal. 494, 30 Pac. 762; Bliss on Code Pleading, p. 244, secs. 150, 246, 247; 4 Ency. of Pl. & Pr. 606; *Henke v. Eureka Endowment Assn.,* 100 Cal. 429, 34 Pac. 1089; 5 Ency. of Pl. & Pr. 363; 17 Ency. of Law, 2d ed., 12.)

James E. Babb, for Respondents.

Each of the three causes of action in the complaint of appellant is founded upon covenants in the lease. Those covenants are in no way pleaded in the complaint, other than by setting forth the lease as "Exhibit A" of the complaint at the end of, and entirely outside of, the complaint. It results, therefore, that the covenants relied upon are not sufficiently pleaded accord-

ing to the rules of code pleading, and the complaint is subject to the demurrer sustained thereto. (*Hartford Fire Ins. Co. v. Kahn,* 4 Wyo. 364, 34 Pac. 895; *Johnson v. Home Ins. Co.,* 3 Wyo. 140, 6 Pac. 729; *Guadalupe County v. Johnston,* 1 Tex. Civ. App. 713, 20 S. W. 833; *Miles v. Mays,* 16 S. W. (Tex.) 540.) The general rule is that each portion of a contract is considered and construed with reference to every other portion thereof. Here is an exception of liability on account of damage to the premises caused by elements. It necessarily relieves the lessees from every covenant at any place in the lease in respect of which they would be liable in case of damage to the premises caused by the elements. (See Taylor on Landlord and Tenant, 8th ed., sec. 360; *Allan v. Culver,* 3 Denio, 384, 17 N. Y. Com. Law, 361; *Ball v. Wyatt,* 8 Allen, 275; *Van Wormer v. Crane,* 51 Mich. 363, 47 Am. Rep. 582, 16 N. W. 686.) The present action, being on a contract, cannot be amended from contract to tort. (1 Ency. of Pl. & Pr. 567; *Ramirez v. Murray,* 5 Cal. 222; *Hackett v. Bank of Cal.,* 57 Cal. 535; *Wheeler v. West,* 78 Cal. 95, 20 Pac. 46.) Matters of tort cannot be joined in a complaint in an action by contract. (*Stark v. Wellman,* 96 Cal. 400, 31 Pac. 259.) Some of the matters stricken out would be relevant only in an action *ex delicto,* and remaining in were not sufficient to state a cause of action *ex delicto,* and therefore were irrelevant. Other matters stricken out were evidentiary conclusions, matters of law, etc. The grounds of uncertainty specified in the demurrer were also well founded, and the judgment should be affirmed for this reason, if no other. Inconsistency is a ground of demurrer for uncertainty. (*Blasingame v. Home Ins. Co.,* 75 Cal. 633, 17 Pac. 925; *Heeser v. Miller,* 77 Cal. 192, 79 Pac. 375.)

SULLIVAN, J.—This action arose out of an alleged breach of certain covenants in a lease whereby the appellant, who was plaintiff in the court below, leased to respondents certain premises and a sawmill thereon situated, about two miles easterly of the city of Lewiston, on the Clearwater river. By reason of an alleged breach of certain covenants of said lease the appellant seeks to recover the value of said sawmill, which was de-

stroyed by fire during the continuance of said lease; also damages for the failure of respondents to furnish steam with which to operate a pulsometer, and for three months' rent of said premises and sawmill. The covenants of said lease on the part of respondents upon which this action is based are as follows:

"1. Pay to the first party, or his heirs or assigns, during the first year of the lifetime hereof, monthly rental in advance on the first day of each and every month in the sum of forty-two ($42) dollars. If second party exercises option for continuance hereof as hereinbefore provided, then to pay monthly rental in advance on the first day of each and every month during the said term of twenty years, as hereinbefore provided for, the sum of ($50) dollars. 2. To furnish steam sufficient to operate a certain pulsometer used by first party in irrigating his said land, during the irrigating season of each year. 3. If steam sufficient for milling and irrigating purposes be not generated at any time, then the second party agrees to substitute night service, and sufficient steam supply at night to operate pulsometer in lieu of day service thereof. If mill be not running, then first party to have the use of boiler to generate steam for operating the said pulsometer, and to so operate the same at his own expense. 4. To keep a watchman in and about the said mill, at all times during the active working thereof. 5. Not to sublet, assign, nor transfer the said lease. nor any part thereof, without the written assent of the first party hereto. 6. To suffer no default in the payment of rent or taxes provided for herein to exist for more than ten (10) days. 7. To pay all taxes that may be levied or assessed upon or against any or all of said property after the same become due, and prior to the time they become delinquent. 8. To make such improvements and repairs from time to time at his own expense as shall be necessary to maintain the demised premises and property in as good condition as the same are now or may hereafter be put to, reasonable use and wear thereof excepted. 9. To quietly quit and surrender up the possession of said demised property and premises, at the expiration of the terms herein provided for, in as good condition as the same are now or may hereafter be put to, reasonable use and wear

thereof, and damages by the elements, excepted. It is expressly understood and agreed that second party shall have the privilege of building piers on the bar on the east side of the island referred to above, necessary for the use and enjoyment of the demised premises. It is expressly understood and agreed that the said party of the second part shall have the right to remove any and all improvements made by him, at the expiration of the terms herein provided for, and which can be so removed without any or material damage to the said premises, but such removal shall only be made after the compliance with the terms hereof. It is further expressly understood and agreed that in the event of the breach of any of the terms of this agreement, and the continuance thereof for the period of ten (10) days, as provided herein, such breach and continuance shall terminate this lease, and all improvements, machinery, and fixtures, of whatsoever kind or nature, shall inure to, and be the property of, the first party, and answer for liquidated damages caused by such breach, and be in payment as of rent for the unexpired term. It is further expressly understood and agreed that in the event of the happening and continuance of any default in the terms hereof, as provided for hereinbefore, then it shall be lawful, and the said first party is hereby authorized, either by himself or his authorized agent, to re-enter said demised premises and take possession thereof; and the said second party further agrees that on the happening of any such default, and the continuance thereof, as provided herein, then the said second party will quietly quit and surrender up the possession hereof on demand, either to the first party, or to whomsoever he may designate. The term of this lease begins March 1, 1900."

The cause was determined on a third amended complaint, which will hereinafter be referred to as the complaint. Said lease is attached to the complaint, and referred to therein as "Plaintiff's Exhibit A," and it is alleged that said lease is made a part of said complaint, the same as if specifically set out at length therein.

As a first cause of action, it is alleged, *inter alia,* that the respondents took possession of said sawmill and premises there-

after, and began the active working of said mill, and, as a part of the active working thereof, left fires overnight in the furnace of fire box, to enable the generation of steam on the day following at an early hour, and that up to within three days (the exact time of which was unknown to the appellant) of the destruction of the said mill by fire, as thereinafter stated, the respondents maintained a watchman at night for the purpose of protecting the said mill from destruction by fire; that during the active working thereof, frequently, in the daytime and in night-time, incipient fires started at said mill; and that the presence of the workmen in the daytime and of the watchman at night prevented the same from spreading, and prevented destruction of the mill, except at the time thereinafter stated.

The fifth, sixth, seventh, and eighth paragraphs of the first cause of action are as follows:

"5. That on the twenty-seventh day of April, 1900, the defendants were engaged in the active working of said mill, and maintained large fires in the furnaces thereof; that at the close of the day the defendants, without knowledge of this plaintiff, or any consent thereto on his part, notified the watchman theretofore employed by them as above stated that he need not go on duty that night, and refused and failed to maintain such watchman; that there were left in the furnaces of said mill large fires, as stated hereinbefore, and that in the night-time of the 27th of April, 1900, and the early part of April 28, 1900, the said mill became ignited from such fires, and that the same was totally destroyed by fire, except the engine and boiler; that no watchman was maintained at the time of the destruction of the said mill, and that the presence of a watchman would have enabled the extinguishment of the flames before the destruction of the said mill; that the absence of the said watchman was not known to this plaintiff until the said mill was enveloped in flames; that at that time the defendants admitted their failure to keep such watchman was the cause of the destruction of the said mill, and admitted that such failure was a breach in the conditions of the said lease; that the said fire destroyed the mill referred to, and all

machinery therein; that the same destroyed the machinery which defendants had therein; that at such time there were no improvements made on such premises by defendants or any of them; that the defendants left no machinery, improvements, or fixtures whatever on said premises, except fixtures which were and are a detriment to the estate, and to the use and enjoyment thereof by plaintiff.

"6. That since the destruction of the said mill and machinery as above stated, the defendants have failed, neglected, and refused, and still fail, neglect, and refuse, to reconstruct, rebuild, or repair the same, and have failed, neglected, and refused, and still fail, neglect, and refuse, to repay the damage thus done, and have made no manner of reparation therefor; that the said mill and the machinery of this plaintiff so destroyed by fire was at the date of the destruction thereof of the value of $2,500; that thereafter, and within ten days, the defendants failed to make any repairs of the damage and injury thus done.

"7. That by the failure of the said defendants, and each of them, to rebuild the said mill, and to place the premises in as good condition of repair as the same were when demised, the plaintiff has been damaged in the sum of $2,500.

"8. That the defendants failed, after the destruction of the said mill and machinery, for more than a period of ten days, to place the demised premises in as good condition of repair as the same were at the time of the leasing thereof, or as they were at the time of the destruction thereof."

The sixth paragraph of the second cause of action is as follows: "That by reason of the total destruction of the said mill, and the failure of the defendants to operate the same thereafter, the defendants failed to furnish steam for the pulsometer of the plaintiff as specified in said lease, and that plaintiff has been compelled so to do at his own expense; that by this he has been further damaged in the sum of $250."

In the third cause of action it is alleged that after the destruction of said mill and machinery the defendants promised and agreed to rebuild said mill, and to place the demised premises in as good condition as the same were when demised and

when the fire occurred, and for that purpose took possession, and retained such possession, of the said premises, and maintained such possession for the months of May, June, and July, 1900, and agreed that, in the event of the failure to so replace and rebuild the said mill, their liability as partners under the lease should continue; that, after the defendants had maintained such possession for the period named, they failed, neglected, and refused to so repair the said mill, or to replace the same, and failed to place the said premises in as good condition of repair as the same were when demised, or as the same were when destroyed by fire, and thereafter plaintiff terminated the said lease; that the said defendants failed, neglected, and refused to pay plaintiff the rent of the said premises for the months of May, June, and July, 1900, and that same was reasonably worth and of the agreed price of forty-two dollars per month, as specified in the said lease. The prayer is for $2,876 damages, interest, costs of suit, and proper relief.

A motion was made by counsel for respondents to strike out portions of the complaint. A demurrer was also interposed, and an answer filed. The court sustained the motion to strike, in part, and denied it in part, and sustained the demurrer to each cause of action, and thereafter entered judgment of dismissal. This appeal is from the judgment.

Eleven errors are assigned and relied upon for a reversal of the judgment. Errors numbered 6, 7, 8, 9, 10, and 11 relate to the sufficiency of the allegations of the complaint, and are considered by counsel for appellant together, and we have so considered them. After a careful consideration thereof, we conclude that it was error to sustain the demurrer on all or either of the grounds stated therein.

Sustaining the motion to strike out certain parts of the complaint is assigned as error. We have carefully considered said motion and order in detail, and conclude that the court erred in sustaining said motion. Under the provisions of section 4168 of the Revised Statutes of 1887, the complaint must contain a statement of the facts constituting the cause of action, in ordinary and concise language; and, while the complaint under consideration goes more into detail than was

absolutely necessary, we are of the opinion that the court erred in sustaining said motion to strike, as the order made would leave the complaint meaningless. In cases of this kind the facts should be sufficiently set out to apprise defendants of what plaintiff expects to prove. The facts were more particularly set out than was ·absolutely necessary, but the respondents were not prejudiced thereby.

Counsel for respondents contend that the lease marked "Exhibit A," and attached to and made a part of the complaint, is not sufficiently pleaded. The second paragraph of the complaint contains the following allegation, to wit: "That on the twenty-seventh day of February, 1900, the plaintiff and defendants, as copartners, as above stated, executed the lease, a copy of which is marked 'Plaintiff's Exhibit A,' and made a part hereof, hereby incorporated herein the same as if specially set out at length hereat"; and it is further alleged that defendants entered into the possession of the leased premises, and began the active operation of said sawmill.

This court held in *More v. Irrigation Co.,* 3 Idaho, 729, 35 Pac, 171, that a contract may be declared on according to its legal effect or *in haec verba,* and if a contract is attached to the complaint, and by apt allegations made a part thereof, the contract is sufficiently pleaded. The legal effect of many of the provisions of said contract as contended for by counsel for appellant is declared on in the complaint, and we think the complaint states a cause of action.

There is some contention over the proper construction of the following paragraphs of said lease, to wit:

"To quietly quit and surrender up the possession of said demised property and premises at the expiration of the terms herein provided for, in as good condition as the same now are or may hereafter be put to, reasonable use and wear thereof and damages by the elements excepted."

"It is further expressly understood and agreed that in the event of the breach of any of the terms of this agreement, and the continuance thereof, for a period of ten (10) days, as provided herein, such breach and continuance shall terminate this lease, and all improvements, machinery, and fixtures, of

whatsoever kind or nature, shall inure to, and be the property of, the first party, and answer for liquidated damages caused by such breach, and be in payment as of rent for the unexpired term."

It is contended by counsel for respondents that the first above-quoted provision of said lease does not require the surrender of the leased property in as good condition as when leased, for the reason that it was destroyed by the elements (fire), and that damages to said property caused by the elements are excepted by that provision of the lease. That contention would, no doubt, be correct, if it were shown that said fire occurred from the act of God as the books put it, but if the fire occurred by reason of respondents' banking fire in the furnaces of said mill, and failing to keep a watchman as stipulated in said lease, then we think they are liable for the value of the property destroyed, and on that theory of the case the complaint states a cause of action. If the allegations of the complaint be true, the burning of the mill was caused by human agency, and not by the act of God. But it is contended that the provision of said lease last above quoted provides for liquidated damages, or provides what the damages shall be in case of a breach of any of the covenants of said lease. We cannot conclude from said provision, read in connection with other provisions of said lease, that it was the intention of the parties that, in case said mill was burned by reason of the respondents' failure to perform some acts which by the terms of said lease they had agreed to perform, the appellant had agreed to receive ashes and ruined machinery as liquidated damages. The clear intention was that the mill and improvements thereon should be returned to appellant unless destroyed by the elements without human agency, by the act of God, or at least without having been destroyed by reason of banking fire in the furnaces, and then failing to keep a watchman as required by the terms of said lease.

It is contended that the respondents agreed to keep a watchman at said mill only during the active working thereof, and that as said mill was burned in the night-time, when said mill was not being operated, they were not required by the

terms of said lease to keep a watchman there at the time said mill was burned. If it be true that respondents were operating said mill in the daytime, and banked fires in the furnaces thereof at night, it was their duty, under said lease, to keep a watchman during the night. Said provision of the lease clearly provides for the keeping of a watchman in the night-time when said mill is operated during the daytime.

The judgment of dismissal is reversed and set aside, and the cause remanded, with instructions to overrule said demurrer and motion to strike out parts of the complaint, and to permit defendants to answer, and for further proceedings consistent with this opinion. Costs of this appeal are awarded to appellant.

Quarles, C. J., and Stockslager, J., concur.

Per CURIAM.—In a petition for rehearing the respondents complain that this court did not pass on their assignment of error as to the action of the district court in striking the answer and cross-complaint of respondents from the files, and cite, in support of the proposition that this court may pass upon such errors, the decision in *Gordon v. Lemp,* 7 Idaho, 677, 65 Pac. 444. Perhaps the said decision is somewhat misleading, yet it only speaks of the right to make assignments of cross-errors. The rule is too well settled, that appellate courts will not review errors against the successful party unless he appeals or cross-appeals from the judgment, to need comment. In this case the respondents should have taken a cross-appeal, which they could have done upon the record in the original appeal, if they desired the action of the trial court in striking their answer and cross-complaint from the files reviewed in this court. However, inasmuch as the court erroneously struck the complaint from the files, and also struck from the files defendants' answer and cross-complaint, it will be proper for the trial court to permit the defendants to answer and make any defense that they may have, and set up any counterclaim that they may have, growing out of the transactions set forth in the complaint or connected therewith, in order to make up the issues in the case. The rehearing prayed for is denied.