67 P.3d 36

**J.R. SIMPLOT COMPANY, a Nevada Corporation, Plaintiff–Appellant– Cross Respondent,**

**v.**

**RYCAIR, INC., Defendant–Respondent– Cross Appellant.**

No. 28040.

Supreme Court of Idaho, Boise, January 2003 Term.

March 5, 2003.

Rehearing Denied April 18th, 2003.

P. Mark Thompson, Boise; Jones, Gledhill, Hess, Andrews Fuhrman, Bradbury & Eiden, PA, Boise, for appellant. Phil D. DeAngeli, Boise, argued.

Lerma Law Office, PA, Boise, for respondent. John J. Lerma, Boise, argued.

WALTERS, Justice.

J.R. Simplot Company, Inc. ("Simplot") leased a building to Rycair, Inc. The building was destroyed by a fire during the lease period. Simplot sued Rycair, alleging negli-

gence with respect to the cause of the fire and breach of contract for failure to maintain fire insurance on the building. Rycair filed a motion for partial summary judgment on the breach of contract claims. The district court granted Rycair's motion. The case went to trial on the negligence claim and the jury determined that Rycair was not negligent with respect to the cause of the fire. The district court awarded attorney fees to Rycair. We affirm the summary judgment, but we vacate the district court's order awarding attorney fees to Rycair.

## FACTS AND PROCEDURAL BACKGROUND

Simplot and Rycair entered into a commercial lease whereby Rycair leased the premises on Irving Street in Boise, known as the Kaiser building. The lease was executed on September 1, 1995. On December 6, 1996, the Kaiser building was destroyed by fire. Simplot made a demand upon Rycair for the loss of the building, which Rycair's insurer refused to pay.

Simplot filed suit on September 19, 1997, to recover its losses related to the destruction of the building, alleging breach of contract and negligence. Rycair filed a motion for partial summary judgment on the breach of contract claims, requesting that the district court find that Rycair was not required to purchase and keep in force first-party fire insurance on the building and that it was not required to indemnify Simplot for the property damage without proof of Rycair's negligence. The district court granted Rycair's motion and dismissed Simplot's remaining breach of contract claims against Rycair.

After obtaining permission from the court, Simplot filed an amended complaint. The complaint restated the breach of contract claims as well as additional breach of contract theories. The new contract theories alleged that Rycair was required to return the building in a condition equal to or better than at the commencement of the lease, that Simplot had suffered damages because Rycair had failed to obtain an insurance policy in which Simplot was designated as the insured and that Simplot was entitled to damages for Rycair's violation of the Uniform

Building Code. Rycair filed a second motion for partial summary judgment with regard to the new breach of contract theories. The district court granted Rycair's motion.

Rycair filed a third motion for summary judgment regarding the negligence claims. The district court heard argument and denied the motion. Six days before trial, a senior judge was assigned to preside over the jury trial. Four days before trial, Simplot filed a motion to reconsider the district court's grant of summary judgment. On the morning of trial, the senior judge denied the motion for reconsideration on the grounds that it was untimely and that he believed that Simplot was seeking to have another judge review the same arguments previously made to the court.

The jury trial began on September 24, 2001. At the conclusion of trial, the jury rendered a verdict that Rycair was not negligent. The district court awarded Rycair attorney fees and costs as a matter of right. No discretionary costs were awarded.

Simplot appeals the district court's grant of Rycair's motions for partial summary judgment and the award of attorney fees. Rycair cross-appeals the district court's denial of certain costs that were not granted by the district court.

## ISSUES PRESENTED ON APPEAL

1. Did the district court err in granting partial summary judgment to Rycair?

2. Did the district court err in awarding attorney fees to Rycair?

3. Were Rycair's costs properly calculated by the district court?

4. Are either of the parties entitled to attorney fees on appeal?

## STANDARD OF REVIEW

The standard of review on appeal from an order granting summary judgment is the same standard that is used by the district court in ruling on the summary judgment motion. *Baxter v. Craney*, 135 Idaho 166, 170, 16 P.3d 263, 267 (2000). All disputed facts are to be liberally construed in favor of the non-moving party, and all reasonable in-

**560**

ferences that can be drawn from the record are to be drawn in favor of the non-moving party. *Eagle Water Company, Inc. v. Roundy Pole Fence Company, Inc.*, 134 Idaho 626, 628, 7 P.3d 1103, 1105 (2000). Summary judgment is appropriate only when the pleadings, depositions, affidavits and admissions on file show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. I.R.C.P. 56(c).

## DISCUSSION

**1. Did the district court err in granting partial summary judgment to Rycair?**

### A. *Section 10 of the Lease*

Both parties asserted to the district court that the lease was unambiguous, however, Simplot contended that section 10(c) of the lease should require Rycair to purchase insurance to cover the building.[1] Simplot ar-

gues that the district court erred by allowing extrinsic evidence concerning the meaning of the term "fire legal insurance" to be presented, given that the lease was unambiguous. Finally, Simplot avers that it should have been named as an additional insured on Rycair's insurance policy. Simplot contends that, had Simplot been named as an insured, it would not have incurred expenses for debris removal, independent adjuster fees and damages to the Kaiser building.

### 1. *First–Party Insurance*

■ The district court agreed with the parties that the lease was unambiguous. The district court concluded that the insurance provision in Section 10 did not require Rycair to provide first-party fire insurance. The district court held that the term "fire legal insurance" was a term of art. The district court determined that fire legal in-

---

1. **10. Insurance.** Lessee agrees at its cost and expense to obtain and keep in force during the term of this Lease a policy or policies of insurance, in which Lessor as well as Lessee, are designated as "the insured", with an insurance company or companies qualified to write that type of insurance in the State of Idaho, covering liability in the following minimum amounts:

 (a) Worker's compensation coverage—statutory limitation.

 (b) Automobile and general Liability—$1,000,000.00 CSL

 (c) Combined Single Limit Bodily Injury and Property Damage Insurance insuring the Lessee and Lessor against any liability arising out of the use, occupancy or maintenance of the Premises and all other areas appurtenant thereto. Such insurance shall be in an amount not less than $1,000,000.00 per occurrence and shall contain fire legal protection with limits of at least $100,000.

 (d) Lessee is to provide their own insurance coverage on their equipment, supplies and inventories.

 ....

 Lessee shall indemnify and hold harmless Lessor from and against any and all claims arising from Lessee's use of the Premises, or from the conduct of Lessee's business or from any activity, work or things done, permitted or suffered by Lessee in or about the Premises or elsewhere and shall further indemnify and hold harmless Lessor from and against any and all claims arising from any breach or default in the performance of any obligation on Lessee's part to be performed under the terms of this Lease, or arising from any negligence of the Lessee, or any of Lessee's agents, contractors, or employees, and from and against all costs, attorney's fees, expenses and

liabilities incurred in the defense of any such claim or any action or proceeding brought thereon; and in case any action or proceeding be brought against Lessor by reason of any such claim, Lessee upon notice from Lessor shall defend the same at Lessee's expense by counsel satisfactory to Lessor. Lessee, as a material part of the consideration to Lessor, hereby assumes all risk of damage to property or injury to persons, in, upon or about the Premises arising from any cause and Lessee hereby waives all claims in respect thereof against Lessor; provided Lessor shall indemnify and hold Lessee harmless from any claims arising from Lessor's negligence.

Lessee hereby agrees that Lessor shall not be liable for injury to Lessee's business or any loss of income therefrom or for damage to the goods, wares, merchandise or other property of Lessee, Lessee's employees, invitees, customers, or any other person in or about the Premises, nor shall Lessor be liable for injury to the person of Lessee, Lessee's employees, agents or contractor, whether such damage or injury is caused by or results from fire, steam, electricity, gas, water or rain, or from the breakage, leakage, obstruction or other defects of pipes, sprinklers, wires, appliances, plumbing, air conditioning or lighting fixtures, or from any other cause, whether the said damage or injury results from conditions arising upon the Premises or upon other portions of the building which the Premises are a part, or from other sources or places and regardless of whether the cause of such damage or injury or the means of repairing the same is inaccessible to Lessee. Lessor shall not be liable for any damages arising from any act or neglect of any other tenant, if any, of the buildings in which the Premises are located.

surance "is commonly required in leases to cover the costs of the deductible on the lessor's own insurance and to effect a waiver of subrogation by the lessor's insurer against the lessee in event a fire is caused by the tenant." The district court then decided that "[t]he requirement of this type of fire legal protection coverage is consistent with the language of paragraphs 7 and 16 of the lease, which indicated that where the loss is caused by fire or any other matter not caused by the lessee, and insured by the lessor, lessor shall be required to make all of the necessary repairs."

Section 10(c) provides that Rycair was to have bodily injury and property damage insurance insuring Simplot and itself; such insurance shall contain fire legal protection with limits of at least $100,000. Section 7 required Simplot to make structural repairs to the Kaiser building provided such repairs are not made necessary by Rycair's negligence, misuse or abuse.[2] Section 16 of the lease provides that if the Kaiser building was destroyed by a fire that is not the result of Rycair's negligence, use, misuse or abuse, that the lease may be terminated or if the parties elect to continue with the lease that Simplot will restore and reconstruct the damaged building.[3]

Given that fire legal insurance covers the liability of Rycair for fire damage caused by its own negligence and that Sections 7 and 16 cover the Kaiser building if damaged by fire, the lease does not require Rycair to have first-party fire insurance for the Kaiser building. A fair reading of Section 10 of the lease shows that this section is for liability purposes and does not make the lessee an insurer or require first-party insurance coverage for fire damage to the building as argued by Simplot. The district court correctly determined that the lease provided there would be liability on the part of Rycair only if Rycair was negligent in causing the fire. The jury found that Rycair was not negligent in causing the fire, therefore, there is no requirement of insurance for liability on the part of Rycair.

This Court affirms the district court's determination that the lease was unambiguous and did not require Rycair to purchase first-party fire insurance.

### 2. Extrinsic Evidence

 The parol evidence rule provides "[i]f the written agreement is complete upon its face and unambiguous, no fraud or mistake being alleged, extrinsic evidence of prior or contemporaneous negotiations or conversations is not admissible to contradict, vary, alter, add to or detract from the terms of the contract." *Belk v. Martin*, 136 Idaho 652, 657, 39 P.3d 592, 597 (2001) (citations omitted).

The district court determined that "[u]se of a term of art does not necessarily render a contract provision ambiguous, and testimony concerning what the term means, in other

---

2. **7. Construction and Repair.**

At its sole cost and expense, Lessor shall make all structural repairs to the roof and exterior wall framework (defined as beams or trusses and purlins, columns and girts), and foundation of the building, excluding doors, door frames, and exterior wall and roof sheeting, wherein the Leased Premises are located, and all repairs to the interior of the Leased Premises which may be of a structural nature (provided such repairs are not made necessary by the usual and ordinary use of the Leased Premises by Lessee, or in the alternative by Lessee's negligence, misuse or abuse) and all repairs structural or otherwise, to the interior, as well as the exterior, of the Leased Premises made necessary by damage or destruction through fire or other comprehensive cause to the extend covered, excluding deductibles. . . .

3. **16. Damage or Destruction.** . . .

In the event the Leased Premises are damaged or destroyed by fire or any cause, that is not the result of Lessee's use, misuse, abuse or negligence, such that less than ninety percent (90%) of the floor area of the building situated on the Leased Premises may be advantageously used by Lessee for conduct of its business during the period of reconstruction, then at the option of either party, and upon notice in writing delivered to the other party within thirty (30) days following the occurrence of such destruction, this Lease may be declared terminated by either party as of the date of such destruction.

In the event that neither party elects to terminate this Lease, it shall continue in full force and effect, and in that event and within a reasonable period of time Lessor shall proceed to restore and reconstruct the damaged portion of the building and rent during this period shall be prorated as a percent of usable floor area during the period of repairs.

words how it is ordinarily used, does not constitute a reference to parol evidence."

The evidence presented by Rycair was an affidavit from Richard Chipman, a former commercial and property insurance underwriter. In his affidavit, Mr. Chipman stated that " '[f]ire legal protection' or 'fire legal liability' provides some additional protection to the insured under certain circumstances. If an insured is leasing his business facility from another person, and the insured were to negligently cause a fire which damaged the leased premises, 'fire legal protection' would provide coverage for the damage to the leased premises up to the insured's policy limit for 'fire legal coverage.' "

Simplot alleges that the term "fire legal insurance" was not raised until Rycair's rebuttal argument at the first summary judgment hearing and therefore it did not have an adequate opportunity to dispute it. However, Mr. Chipman's affidavit was filed on the same day as Rycair's motion for partial summary judgment. It is clear that Simplot was put on notice of Rycair's theory and had the opportunity to dispute the term.

The evidence presented by Rycair sought to define the lease term "fire legal protection" as used by the insurance industry. Rycair's evidence did not seek "to contradict, vary, alter, add to or detract from the terms of the contract" nor was the evidence "prior or contemporaneous negotiations or conversations" between the parties. *See id.* Simplot has not contended that the term "fire legal protection" is other than a term of art.

The district court correctly concluded that the term "fire legal protection" was a term of art within the insurance industry. The court relied upon Mr. Chipman's affidavit to reach this conclusion. Further, in determining the meaning of "fire legal insurance," the district court not only considered the affidavit presented by Rycair but also cited to a Practicing Law Institute Publication and a Pennsylvania case.

■ "Parol evidence, of course, may be received to interpret a term of art used within a contract." *In re Marriage of Shaban,* 88 Cal.App.4th 398, 105 Cal.Rptr.2d 863, 867 (2001). Extrinsic evidence, such as expert testimony and learned treatises, may also be helpful to understand and give meaning to terms of art, but such evidence should be received at the discretion of the court and is not controlling. *McNulty v. Taser Int'l Inc.,* 217 F.Supp.2d 1058, 1062 (C.D.Cal. 2002).

We conclude that the parol evidence rule was not a bar to the evidence being admissible before the district court. This Court holds that the district court did not err in determining the plain meaning of the lease term requiring "fire legal protection."

### 3. Named Party

■ According to section 10(c) of the lease, Rycair should have had property damage insurance, which insured both Simplot and itself and contained fire legal protection with limits of at least $100,000. Given this fact, Rycair should have named Simplot in its policy. However, the fire legal protection required by the lease only would have compensated Simplot for the Kaiser building had Rycair been negligent. The jury determined that Rycair was not negligent, therefore, Simplot has suffered no damages by not being named as an insured.

This Court holds that the district court did not err in finding that Simplot did not suffer any damages by not being named in Rycair's insurance policy.

### B. Section 5 of the Lease

■ Simplot contends that Rycair did not submit an argument based on Section 5 and, therefore, the district court should not have entered judgment in Rycair's favor based upon this section.[4] Simplot alleges that the

---

4. **5. Use.**
The Premises shall be used and occupied only for light manufacturing and for no other purpose without the express prior written consent of the Lessor.

The use and occupation of the Leased Premises by Lessee, shall at all times by [sic] conducted in

compliance with federal, state, county, and municipal statutes, ordinances, and regulations. Lessee shall not use nor permit upon the Leased Premises any debris or waste material. Lessee will not use the Leased Premises in any manner offensive to Lessor or to other persons occupying premises in the vicinity of the Leased Premises.

section is not limited to indemnity but requires Rycair to protect and save Simplot and thus requires Rycair to pay for Simplot's losses relating to the Kaiser building. In response, Rycair argues that the lease does not require it to pay Simplot damages, unless Simplot proves Rycair's negligence, which Simplot failed to do at the jury trial.

The district court found that the "protect, save and keep Lessor harmless" language of Section 5 only applies to claims made against Simplot by third parties for personal injury or property damages arising out of Rycair's use of the property. The district court further pointed out that "the parties made specific provisions concerning damage to and/or destruction of the building, including who would be responsible for such loss and under what circumstances, in paragraphs 7 and 16. These provisions make it clear that Rycair is responsible for payment of such losses only if they are due to Rycair's negligence." The district court found that Section 5's broad reference to indemnification would not govern over the more specific provisions contained in Sections 7 and 16.

The lease contains specific provisions that govern in the case of destruction of the property. Section 5's language of "protect, save and keep Lessor harmless" does not shift the risk of loss to Rycair. Rather, the language appears to protect Simplot from third party claims that arise from Rycair's negligence.

> Lessee agrees that it will at all times protect, save, and keep Lessor harmless from and against all action, costs, expenses, damages, counsel fees and/or losses of every kind or nature arising from, or growing out of, the occupancy of the Leased Premises by Lessee, committed either on or off the Leased Premises, and Lessee agrees to repay or cause to be repaid to Lessor on demand any sum or sums of money that Lessor may be required to pay by reason thereof. . . .

5. **6. Maintenance and Alterations.**
Lessee having examined and become familiar with the condition of and access to the Leased Premises hereby accepts the Premises and all fixtures, appurtenances and equipment in their "AS IS" condition existing as of the Lease commencement date or of the date that Lessee takes possession of the Premises, whichever is earlier regardless of defects, either latent or patent. Lessee (at its sole cost and expense) shall repair and maintain the Leased Premises. Upon the expiration of this Lease, the Leased Premises

Although discussed in the context of returning property to the same condition as at the beginning of the lease, the Texas Supreme Court has stated:

> 'Looking to the terms and subject matter of the contract, we do not think it reasonable or fair to conclude that the parties contemplated that the lessees were to become insurers of the property against those casualties which ordinary prudence and foresight could not have guarded against; or that it was supposed or intended that they were to become liable to repair the loss in case of accidental destruction of the property by fire without negligence of fault on their part. . . . It would have been a very extraordinary liability for the lessee to assume; and, if intended, it would doubtless have been clearly expressed in the lease.'

*Orr v. Vandygriff,* 251 S.W.2d 573, 574 (1952) (quoting *Howeth v. Anderson,* 25 Tex. 557 (1860)).

This Court holds that the district court correctly considered and applied Section 5 in determining whether Rycair was liable to Simplot for its damages. The decision of the district court is affirmed.

### C. *Section 6 of the Lease*

▮ Simplot contends that Section 6 of the lease requires Rycair to return the premises to the condition equal to or better than it was at the commencement of the lease.[5] There-

> shall be returned to Lessor in a condition equal to or better than that at the commencement of the lease, as well as better than broom clean in office and bathroom areas and full operational condition, normal "wear and tear" excepted.
>
> Lessee accepts said Leased Premises "AS IS" in its present condition and will save and hold harmless Lessor from any claims, causes of action or administrative sanctions which may be brought due to the Leased Premises violating any federal, state or local law or regulation, including, but not limited to OSHA laws, environmental laws and noise ordinances which arise after the Lease date.
>
> No alterations shall be made in or to the Leased Premises without the prior written consent of Lessor. Should Lessor consent to alterations, all alterations shall be of a non structural nature, and shall be made in a good and workmanlike manner, in compliance with all state and local ordinances and regulations, and upon expiration of the term of this lease, they shall be

fore, Simplot asserts that Rycair should pay for the destruction of the building. Rycair replies that this request would require it to be an absolute insurer of the property.

The district court found that Section 6 related to issues other than loss by fire and that Section 7 specifically governs the fire scenario. The district court determined that because the more specific provision of a contract governs over the more general provision, Section 7 applies to the loss of the Kaiser building.

 The general rule appears to be that normal wear and tear lease requirements do not include fire damage to the property. "The plain meaning of maintain or repair is not synonymous with rebuild. 'Repair' means to amend, not to make a new thing. What controls in a lease is the intent of the parties at the time of execution, and the plain meaning of the language used. The obligation of the lessee will not be extended beyond the plain meaning of the language used, and if there is not an express stipulation requiring the lessee to rebuild the properties destroyed without fault, the loss will fall on the landlord." 49 Am.Jur.2d, *Landlord and Tenant*, § 859 (2001) (citations omitted).

> The general agreement to surrender the premises, at the expiration of a term, in as good condition as they may have been at the beginning of or during the term must be construed with the other covenants in the lease prescribing the liability of the lessees in the event of damages to the premises. It follows that the agreements to keep the premises in good repair, and, at the end of the term, to surrender them in as good condition as they were at the beginning of or during the term are not, and do not include, a covenant to replace a structure totally destroyed by fire without fault of the tenant.

*Realty & Rebuilding Co. v. Rea,* 184 Cal. 565, 194 P. 1024 (Cal.1920).

One Idaho case appears to address this situation. *See Porter v. Allen,* 8 Idaho 358,

69 P. 105 (1902). In *Porter,* the risk of loss of a rented mill that was destroyed by fire was placed upon the lessee. However, it was determined that the fire was caused by the lessee's negligence. This is not the case here, because the jury determined that Rycair was not negligent.

This Court affirms the district court's decision and holds that Rycair was not required to rebuild the building under Section 6 of the lease.

## 2. Did the district court err in awarding attorney fees to Rycair?

 Simplot contends that the district court erred in awarding the portion of attorney fees to Rycair related to the negligence claim. Rycair points out that Simplot's allegations and action in this case were based upon the lease and thus the defense presented by Rycair was based upon the lease. Therefore, Rycair asserts that it was proper for the district court to award attorney fees pursuant to I.C. § 12–120(3). Even if the award under I.C. § 12–120(3) was improper, Rycair contends that the lease provides for attorney fees in defending these claims.

Idaho Code § 12–120(3) allows for the recovery of attorney fees by the prevailing party in a civil action to recover on any commercial transaction. The term "commercial transaction," as defined by I.C. § 12–120(3), includes all transactions except transactions for personal or household purposes. This Court has previously held that " '[a]ttorney fees are not appropriate under I.C. § 12–120(3) unless the commercial transaction is integral to the claim, and constitutes the basis upon which the party is attempting to recover.' " *C & G, Inc. v. Rule,* 135 Idaho 763, 769, 25 P.3d 76, 82 (2001) (quoting *Brower v. E.I. DuPont De Nemours & Co.,* 117 Idaho 780, 784, 792 P.2d 345, 349 (1990)).

This Court has previously held "where there is a valid contract between the parties which contains a provision for an award of attorney fees and costs, the terms of that

considered a part of the building and remain therein, unless Lessor shall request their removal, in which event they shall be promptly removed by Lessee, and the Leased Premises re-

placed in substantially the condition existing on the date of the Lease, normal usage and wear excepted.

contractual provision establish a right to an award of attorney fees and costs." *Lease-First v. Burns*, 131 Idaho 158, 163, 953 P.2d 598, 603 (1998) (quoting *Farm Credit Bank v. Wissel*, 122 Idaho 565, 568–69, 836 P.2d 511, 514–15 (1992)).

Here the lease between Simplot and Rycair provides:

22. **Attorney Fees and Costs.** In the event that either party to the Lease utilizes an attorney to enforce any of the provision hereof, the unsuccessful party agrees to pay the prevailing party all costs and expenses, including reasonable attorney's fees incurred thereon by the prevailing party, and such may be included in the judgment entered in such action.

The district court found that the lease the parties entered into was for commercial use and therefore constituted a "commercial transaction" for purposes of I.C. § 12–120(3). The district court further determined that Simplot's "continuous references to the contract and attempts to inject contract claims or issues into the negligence claim ... shows that the commercial transaction was the basis upon which Simplot attempted to recover." The district court discussed the twelve factors listed in I.R.C.P. 54(e)(3) and awarded a majority of the requested attorney fees to Rycair.

Both I.C. § 12–120(3) and the lease agreement provide for the award to the prevailing party of attorney fees incurred. In this case, the commercial lease is integral to the contract claims and served as one of the theories upon which Simplot sought to recover. Attorney fees could be properly awarded by the district court under the lease and I.C. § 12–120(3) for claims relating to the lease. However, the lease and I.C. § 12–120(3) do not provide for fees on the claims relating to the negligence cause of action. Therefore, Rycair should not be awarded attorney fees for defending at trial the tort claim concerning negligence.

This Court sets aside the district court's award of attorney fees and remands the case to the district court to recalculate the award of fees. The district court should allocate the attorney fees incurred by Rycair in defending against the breach of contract claims but not include fees incurred in defending the count of the complaint that went to trial before the jury on the negligence cause of action.

**3. Were Rycair's costs properly calculated by the district court?**

■ The district court denied a portion of costs requested by Rycair finding that they were "discretionary" costs under I.R.C.P. 54(d)(1)(D). The costs in question were costs relating to expert witness and expedited deposition transcripts. The district court found that Rycair failed to show that the "use of expert testimony on the cause of the fire and value of the property were exceptional costs that should be assessed against Simplot" and that Rycair failed to show "the additional charges for expediting the transcripts was necessary."

Section 22 of the lease provides "the unsuccessful party agrees to pay the prevailing party *all* costs and expenses." (Emphasis added.) The costs of the deposition were incurred in connection to the negligence cause of action and therefore are not covered under the lease provision concerning costs. The determination of whether to award costs was left solely to the discretion of the district court. There has been no showing that the district court abused this discretion in denying the award of these costs.

Therefore, this Court holds that the district court did not err in denying certain costs to Rycair as discretionary.

**4. Are either of the parties entitled to attorney fees on appeal?**

■ Both parties request attorney fees on appeal. This Court has interpreted I.C. § 12–120(3) to mandate an award of attorney fees on appeal as well as at trial. *Eagle Water Co., Inc. v. Roundy Pole Fence Co., Inc.*, 134 Idaho 626, 629, 7 P.3d 1103, 1106 (2000). Both I.C. § 12–120(3) and the lease provide for the award of attorney fees to the prevailing party on appeal.

Because both parties in this case have prevailed in part, this Court will not award

attorney fees on appeal and will require both parties to bear their own costs.

## CONCLUSION

This Court affirms the district court's grant of partial summary judgment to Rycair. The district court's award of attorney fees to Rycair is set aside and remanded to the district court for further action consistent with this opinion. On the issue of costs, this Court holds that the district court properly exercised its discretion in not awarding all of Rycair's costs.

No attorney fees or costs are awarded on appeal.

Chief Justice TROUT and Justices SCHROEDER, KIDWELL and EISMANN, CONCUR.